## WOODS v. ARMOUR & CO., Limited, et al.
## No. 14891.

Court of Appeal of Louisiana. Orleans.
May 21, 1934.

St. Clair Adams, Jr., and Adam H. Harper, both of New Orleans, for appellant.

P. M. Milner, of New Orleans, for appellee Armour & Co.

HIGGINS, Judge.

This is a suit by a passenger against W. E. C. Spicer, the owner of a taxicab, and Armour & Co., Limited., in solido, to recover damages for personal injuries alleged to have been sustained when the cab, in which plaintiff was riding, collided with Armour & Co.'s truck on Magazine street near St. Joseph street on February 16, 1932, at 8:30 o'clock a. m.

The petition alleges that the driver of the cab was at fault in not maintaining a proper lookout, failing to keep his automobile under proper control, in view of the fact that the street was wet and slippery, and in driving at an unlawful and excessive rate of speed in violation of the provisions of the traffic ordinance. The employee of Armour & Co. in charge of one of its trucks is charged with being at fault in driving the vehicle from its parked position on the left, or river, side of Magazine street, across the street and directly in front of the on-coming taxicab, when it was so close that, in order to avoid striking the truck, the taxicab driver was compelled to swerve sharply to his left and strike another truck of defendant which was parked adja-cent to the river curbing of Magazine street; in not giving any signal that the truck intend-ed to cross the street so as to block the path of the cab; in failing to maintain a vigilant lookout; and in parking the second truck on the left side of the street in violation of the provisions of the traffic ordinance.

The defendant Spicer admitted that he was the owner of the taxicab, and that there was a collision, but denied liability. Armour & Co. likewise admitted that there had been a collision, but averred that the proximate cause of the accident was the negligence of the chauffeur in charge of the taxicab in the respects as set forth in the plaintiff's petition, and denied that its employees had in any way violated the provisions of the traffic ordinance, or were to blame for the collision.

When the case was called for trial on the merits, defendant Spicer did not appear and was unrepresented. The trial judge was of the opinion that the sole and proximate cause of the accident was the negligence of the chauffeur of the taxicab in driving at an unlawful and excessive rate of speed, in neglecting to maintain an adequate lookout, and in failing to place his car under proper control, and that the employees of Armour & Co. were free from fault. Judgment was rendered in favor of plaintiff and against the taxicab owner for $650 and dismissing the suit as against Armour & Co. Plaintiff has appealed.

Magazine street is a paved thoroughfare that runs from down town toward up town, being a one-way street in that direction. It measures 41 feet wide, and in the center thereof are located single street car tracks. Armour & Co.'s plant is located on the downtown river corner of St. Joseph and Magazine streets. Behind the plant proper is a loading platform, which is 35 feet from the river gutter curbing. Julia street is one block below St. Joseph street and crosses Magazine street at right angles, and there is a traffic light located at that intersection. The taxicab was being driven up Magazine street. As it reached the corner of Julia street, the red traffic light was showing and it was compelled to stop. When the green light flashed, the taxicab proceeded up Magazine street about the center thereof at a rate of speed estimated between 25 and 30 miles per hour. From Julia street to Armour's loading platform is 357 feet. There was an Armour truck, which measured 6½ feet in width, parked adjacent to the river curb on Magazine street, facing in an uptown direction, with the front wheels turned toward the center of the street. Another Ar-

mour Ford truck, measuring 16 feet in length, was parked behind that one, and the driver thereof pulled away from the curb almost on a right angle across Magazine street for the purpose of backing into the loading platform. It was stopped with the front part thereof between 3 and 6 feet from the lake side curb of Magazine street, the rear being in such a position as to make it necessary for a vehicle that was traveling on the street car tracks to turn to the left in order to avoid colliding with the extreme rear part of the truck. It had been raining, and it appears that there was some oil on the creosoted wooden block paved street, which caused it to be slippery. In attempting to drive around the rear of the truck that had stopped in Magazine street, with its rear about at the lake side rail of the track, as above described, the cab began to skid and crashed into the truck that was parked alongside the river curb on Magazine street. The impact was so great that the truck was driven completely across the street or to the lake side curb on Magazine street, and the cab was extensively damaged. The two passengers in the cab were injured.

The plaintiff and her daughter, who were the passengers in the car, were unable to give very much light on the question of how the accident occurred. The chauffeur says that, when he was within 25 feet of the truck, it pulled across his path, and that he gained the impression that it would continue on its course in an uptown direction, so as to allow sufficient room for him to pass, and, when it stopped in his path, he had to suddenly swerve to the left in order to avoid striking it, with the result that his cab skidded and, before he could right it, it crashed into the parked truck.

The driver of the truck and another employee of Armour & Co. who was standing on the river sidewalk of Magazine street, near the platform, both state that at the time the truck started over the street the red light was against traffic moving up Magazine street, and that at the time the truck stopped preparatory to backing to the platform the taxicab was between 60 and 75 feet from the truck; that it did not move from there until after the crash; that the taxicab chauffeur did not attempt to slow down, but continued on at a high rate of speed estimated at 30 miles an hour and suddenly swerved to his left, which caused the cab to skid for a distance of about 35 feet and then crash into the rear of the parked truck.

The accident happened in the daytime, when there was nothing to intercept the chauffeur's view. The preponderance of the evidence clearly establishes the fact that the taxicab was at least 60 or 75 feet from the truck at the time it stopped between 3 and 6 feet from the lake curbing. There was ample room to pass to its rear. However, the taxicab driver failed to take any precautions whatsoever and continued on at the high and unlawful rate of speed of about 30 miles an hour, which caused his cab to skid as he attempted to turn to the left to avoid the rear of the truck.

We conclude, as did our learned brother below, that the proximate cause of the accident was the negligence of the taxicab driver in running at an unlawful and excessive rate of speed, failing to place his car under proper control under the circumstances, and in not maintaining an adequate lookout.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.